JOHN DAVIS, administrator, *vs.* WILLIAM H. BADLAM
& others.

Suffolk.    December 13, 1895. — February 26, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Life Tenant with Power of Disposition — Eminent Domain — Damages — Election.*

If, during the pendency of a suit for damages for the taking of land by the right of eminent domain, A., who is the life tenant, with power of disposition which has never been executed, dies, and thereafter a settlement of the suit is effected, the money received as damages is to be paid to A.'s estate, if his acts, in the absence of anything to limit or control the natural inference to be drawn from them, are sufficient to show an election by him to avail himself of his right to the proceeds of the land.

PETITION to the judge of probate of the county of Suffolk, by the administrator *de bonis non* with the will annexed of Anne B. B. Vinson, to obtain the instructions of the court as to the construction of her will, and as to the disposition of certain funds.

Hearing before *Holmes*, J., who reversed the decree of the Probate Court, ruled that the proceeds of the land belonged to the husband of the testatrix, and should be paid to M. Adelaide Vinson, his administratrix, and reported the case for the determination of the full court. The facts appear in the opinion.

*J. Cavanagh*, for the brothers and sisters of Mrs. Anne B. B. Vinson.

*F. L. Hayes*, for M. Adelaide Vinson, administratrix of the estate of Cornelius M. Vinson.

ALLEN, J. The case is thus. Mrs. Anne B. B. Vinson, as tenant in common with her brothers and sisters, owned vacant land, which they inherited from their father, and which had been in the family for many years. She died in 1890, leaving a husband, Cornelius M. Vinson, and a will, with the following provisions : " All my personal property of every description, whether now in my possession or yet to be distributed from my father's or mother's estate, I give to my husband above named. I give him also the use and enjoyment for life of all my real estate, with power to sell and convey any part thereof at any time and to give deeds of the same free of trust; and in case of such sale he is to have the proceeds thereof absolutely, but if remaining unsold at his death I give it then to my heirs at law." Her brothers and sisters were her heirs at law.

In 1891 the land was taken by the city of Boston for a public park, under the provisions of St. 1875, c. 185. At this time, Mrs. Vinson's said husband, Cornelius, was life tenant of her share of the land, with power of disposition, which power had never been executed. Damages for the taking of the above lot of land were awarded by the board of park commissioners, but the brothers and sisters of Mrs. Vinson and the said Cornelius were dissatisfied with the award, and appealed therefrom, and in June, 1892, filed in the Superior Court a petition for a jury to determine and estimate the amount of their damages. During the pendency of this suit said Cornelius died intestate. After his

death, a settlement of the suit was made, and the amount of damages agreed on was paid, and the share of the money representing the interest which Mrs. Vinson had owned in the land amounted to $4,285, and was received by her administrator in November, 1893.

Her administrator now sets forth that the brothers and sisters of Mrs. Vinson claim this money, as belonging to them as her heirs at law ; and that the administratrix of said Cornelius also claims it, as belonging to his estate.

Taking the terms of Mrs. Vinson's will literally, neither contingency therein provided for has happened. That is to say, the land was not sold by Cornelius in his lifetime, and it did not remain unsold at his death. It is contended by the administratrix of his estate that the taking of the land by the city was equivalent to a sale by him. It is contended, on the other hand, by the brothers and sisters of Mrs. Vinson, that, since the land was not in fact sold in her husband's lifetime, it must be deemed to have remained unsold, notwithstanding the taking.

When land held under such a power of sale is taken by right of eminent domain before a sale, the money paid for the land stands in its place. *Gibson* v. *Cooke,* 1 Met. 75. *Holland* v. *Cruft,* 3 Gray, 162, 180. Therefore, though the husband could no longer sell the land, he might take the proceeds.

We need not determine whether such proceeds would belong absolutely to him without his doing anything to show that he elected to avail himself of his right to it under the devise, because we are of the opinion that his acts which are recited, in the absence of anything to limit or control the natural inference to be drawn from them, are sufficient to show such election. If he took steps to assert a right and claim to the proceeds of the land, that would amount to such an election. His entering an appeal from the award, and joining in a petition for a jury, and prosecuting the suit until his death, show an assertion of a claim for a share of the damages.

It is, however, urged that these acts may be referred to his interest as holding a life estate in the land, and that, as he would also have a life interest in the proceeds, he would naturally wish to make the proceeds as large as possible ; that all his acts may thus be accounted for ; and that it is for his admin-

istratrix to show that he meant anything more. But, in the absence of anything to show the contrary, we think it more natural and reasonable to infer that his claim was for all that he was entitled to receive, and that he was prosecuting the claim for a share of the proceeds, for his own benefit.

The result is, that the administratrix of the husband's estate is entitled to the money.      *Decree accordingly.*