VIENNA METRO LLC, Plaintiff,

v.

PULTE HOME CORPORATION,
Defendant.

Civil Action No. 1:10cv502.

United States District Court,
E.D. Virginia,
Alexandria Division.

March 29, 2011.

Thomas Arthur Clare, Jeffrey Willian, Katherine Crytzer, Kirkland & Ellis, Washington, DC, for Plaintiff Vienna Metro LLC.

Cathy Ann Hinger, Paul Kaplan, Elizabeth Warner Whip Grau, Jason Cameron Hicks, Washington, DC, for Defendant Pulte Home Corporation Womble Carlyle Sandridge & Rice PLLC.

## MEMORANDUM ORDER

LEE, District Judge.

THIS MATTER is before the Court on the Parties' Motions for Summary Judgment. (Dkt. Nos. 83 & 84.) This case concerns the Defendant Pulte Home Corporation's ("Pulte") failure to construct infrastructure in a timely fashion on Plaintiff Vienna Metro LLC's ("Vienna Metro") property.

There are twelve issues before the Court. The first issue is whether the Court should grant Plaintiff Vienna Metro's Motion for Partial Summary Judgment in regard to Defendant Pulte Home Corporation's breach of contract when Defendant failed to complete its construction obligations under the Declaration. The Court grants Plaintiff's Motion because Defendant materially breached the contract by failing to adhere to the Declaration's timeliness requirements.

The second issue is whether the Court should grant Plaintiff's Motion for Partial Summary Judgment in regard to Defendant's affirmative defense of waiver and/or estoppel when the Declaration expressly precludes the exercise of waiver and/or estoppel. The Court grants Plaintiff's Motion because the Declaration expressly states (1) a delay or failure of one party to complain about a default of the other party's performance obligations will not be considered a waiver, and (2) any waiver of a default must be made expressly and in writing.

The third issue is whether the Court should grant Plaintiff's Motion for Partial Summary Judgment in regard to Defen-

dant's affirmative defense of breach of contract when the Declaration expressly provides a notice and opportunity to cure provision. The Court grants Plaintiff's Motion because the Declaration explicitly provides the process of curing breach of contract.

The fourth issue is whether the Court should grant Plaintiff's Motion for Partial Summary Judgment in regard to Defendant's affirmative defense of illegality when Defendant expressly assumed approval and performance risk. The Court grants Plaintiff's Motion because contract performance was not illegal.

The fifth issue is whether the Court should grant Plaintiff's Motion for Partial Summary Judgment in regard to Defendant's affirmative defense of impossibility when (1) Defendant cannot establish an unexpected occurrence or an intervening act, and (2) Defendant's continued performance under the Declaration is inconsistent with its impossibility defense. The Court grants Plaintiff's Motion because Pulte cannot establish that its performance was rendered impossible as a result of an unforeseeable event.

The sixth issue is whether the Court should grant Plaintiff's Motion for Partial Summary Judgment in regard to Defendant's immateriality defense. The Court grants Plaintiff's Motion because immateriality is inapplicable to breach of contract actions.

The seventh issue is whether the Court should grant Plaintiff's Motion for Partial Summary Judgment in regard to Defendant's laches defense. The Court grants Plaintiff's Motion because laches is inapplicable to breach of contract actions.

The eighth issue is whether the Court should grant Plaintiff's Motion for Partial Summary Judgment in regard to Defendant's unclean hands defense when unclean hands is an equitable remedy. The Court grants Plaintiff's Motion because

unclean hands is inapplicable to breach of contract actions.

The ninth issue is whether the Court should grant Plaintiff's Motion for Partial Summary Judgment in regard to Defendant's impermissible reformation defense. The Court grants Plaintiff's Motion because impermissible reformation is inapplicable to breach of contract actions.

The tenth issue is whether the Court should grant Defendant Pulte Home Corporation's Motion for Summary Judgment in regard to Plaintiff's breach of contract claim when Plaintiff's damages are (1) an alleged eighteen percent recovery on lost investment, (2) wasted costs, and (3) default interest. The Court grants Defendant's Motion because the Declaration precludes recovery of any consequential damages, which includes all of Plaintiff's alleged damages.

The eleventh issue is whether the Court should grant Defendant's Motion for Summary Judgment in regard to Plaintiff's specific performance claim when Plaintiff cannot recover monetary damages. The Court denies Defendant's Motion because (1) the parties contracted for specific performance, and (2) specific performance is appropriate because Plaintiff does not have an adequate remedy at law.

The twelfth issue is whether the non-breaching party is entitled to attorney's fees. The Court holds that Plaintiff is entitled to attorney's fees under the contract following an appropriate showing under Fourth Circuit law. Each issue is discussed below.

## I. BACKGROUND

This case is about Defendant's failure to complete Plaintiff's infrastructure project when Plaintiff lacked incentive to complete the project on time because of the real estate market collapse of 2007–2008.

Plaintiff Vienna Metro LLC, a Virginia limited liability company, and Defendant Pulte Home Corporation, a sophisticated national developer, entered into a contract to develop MetroWest. MetroWest is a fifty-six acre tract of land located adjacent to the Vienna Metro station in Fairfax County, Virginia. Compl. ¶ 1. Vienna Metro owns approximately 9.8 acres of MetroWest, while Pulte owns the remainder. Def. Mot. Summ. J. ¶ 2. On June 21, 2006, the parties executed the Declaration, which sets forth the parties' contractual obligations in developing the MetroWest project. *See generally id.* The Declaration obligated Pulte to perform certain infrastructure design, permitting, and construction work over the entire project site within eighteen months of the Declaration's execution. *Id.* ¶¶ 4, 8.

Section 5.1.1 of the Declaration provided remedies should either Vienna Metro or Pulte default on its obligations. Pl. Ex. 1 at 14. The Declaration reads:

> If any party defaults (the "Defaulting Party") in the performance of any of its covenants or obligations under this Declaration and fails to cure such default within thirty (30) days after written notice (a "Default Notice") from another party (the "Non–Defaulting Party"), then the Non–Defaulting Party, as applicable, shall be entitled to all remedies that are available at law or in equity, including, without limitation, specific performance, self help (as described [in another section]), the right to offset amounts due by the Defaulting Party hereunder, the right to contact third parties, and recovery of reasonable legal fees and costs of collection, with respect to the Non–Defaulting Party's breach of such covenants or obligations, but in no event shall any Party be liable for consequential, punitive or exemplary damages hereunder.... Any amounts due by the Non–Defaulting Party and not paid prior to the end of such thirty (30) day cure

period shall earn interest from the date such funds were originally due until the date paid at eighteen percent (18%) per annum. Each party shall be responsible for the defaults of their respective agents, contractors, employees and representatives.

*Id.* In December 2007 and January 2008, Vienna Metro sent Pulte default notices for failing to complete its required work by the appropriate date. Def. Mot. Summ. J. ¶ 8. It is undisputed that the dates initially set in the Declaration have passed, and that the work set forth in the Declaration is incomplete. Dkt. No. 50 at 2. The contract included a Force Majeure Clause, which provided a maximum extension of time in case of extenuating circumstances. *See* Pl. Ex. 1 at 5. Additionally, the Declaration featured one express timeliness provision for the entire contract, as well as a number of mandatory deadlines. *Id.* at 6. It should be noted that Vienna Metro (1) has no approved site plans, (2) has no design plans, (3) has no tenant, and (4) has no buyer. *See* Def. Mot. Summ. J. ¶¶ 16–18, 21, 22; Pl. Opp'n ¶¶ 16–18, 21, 22. Lastly, Vienna Metro did not identify any evidence that the timing of the infrastructure construction caused Vienna Metro to lose any prospective tenant for MetroWest. Def. Mot. Summ. J. Ex. 9 347:11–348:13.

On May 14, 2010, Plaintiff filed suit in the United States District Court for the Eastern District of Virginia. In addition to a claim for specific performance, Plaintiff alleges monetary damages for real estate taxes, loan interest, and lost return on equity investment. In the alternative, Plaintiff seeks money damages for default interest and wasted costs. To calculate lost return on equity investment, Plaintiff attached eighteen percent interest for its costs over the last several years. *See* Def. Mot. Summ. J. Ex. 57. To calculate default interest, Plaintiff attaches eighteen

percent interest to hypothetical, budgeted costs. *See id.* Ex. 38. Following discovery, the Court now considers the Parties' Motions for Summary Judgment.

## II. DISCUSSION

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. A "material fact" is a fact that might affect the outcome of a party's case. *Id.* at 248, 106 S.Ct. 2505; *JKC Holding Co. v. Wash. Sports Ventures, Inc.,* 264 F.3d 459, 465 (4th Cir.2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Hooven–Lewis v. Caldera,* 249 F.3d 259, 265 (4th Cir.2001). A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III. ANALYSIS

### A. Plaintiff's Motion for Partial Summary Judgment

The Court grants Plaintiff's Motion for Partial Summary Judgment as to (1) Pulte's breach of the Declaration and (2) Pulte's affirmative defenses. Each issue will be discussed in turn.

#### 1. Pulte's Breach of the Declaration

■ The Court grants Plaintiff's Motion for Partial Summary Judgment as to Plaintiff's breach of contract because the Declaration is a valid, enforceable written contract that defines the scope and deadlines for completion of Pulte's work, and Pulte materially breached the contract by not completing the work.

■ For a breach of contract to be actionable, a party must establish a material breach. *Horton v. Horton,* 254 Va. 111, 115, 487 S.E.2d 200 (1997). A material breach is a failure to comply with a fundamental aspect of the contract, so that the failure to perform that obligation defeats an essential purpose of the contract. *See id.; see also PBM Prods., LLC v. Mead Johnson Nutrition Co.,* 678 F.Supp.2d 390, 398 (E.D.Va.2009). Furthermore, if a contract makes timely performance essential, a failure to timely perform can be a material breach. *United States ex rel. Virginia Beach Mech. Servs., Inc. v. SAMCO Constr. Co.,* 39 F.Supp.2d

661, 672 (E.D.Va.1999). Additionally, the term "shall" is mandatory in nature. *See Trumball Invs. Ltd. v. Wachovia Bank, N.A.*, 436 F.3d 443, 447 (4th Cir.2006).

The Court holds that Pulte materially breached the contract for two reasons. First, Pulte frustrated the contract's essential purpose of building infrastructure by violating the Declaration's express timeliness provision, § 1.18. Section 1.18 provides that "time is of the essence for every provision of the agreement." Pl. Mtn. Partial Summ. J. Ex. 1 at 6. It is undisputed that the dates initially set in the Declaration have passed, and that the work set forth in the Declaration is incomplete. In short, the work that was contractually obligated to be completed in 2007 is as of yet incomplete in 2011. Assuming that the Declaration's Force Majeure clause is in force because of acts of god, unusual governmental delays, restrictions, moratoria, strikes, war, civil unrest, rioting, unavailability of labor or materials, and unusually inclement weather, Pulte would have had a maximum extension of 360 days in which to complete the construction. *See id.* Ex. 1 at 5. This being said, Pulte did not complete the work by 2008, as it is still incomplete in 2011. *See* Dkt. 50. Hence, Pulte materially breached the contract by failing to adhere to § 1.18 of the Declaration.

Second, the Court holds that Pulte materially breached the contract because the Declaration requires timely completion of each construction phase, as exhibited by the "shall" language of the contract. The Declaration prefaces each aspect of Pulte's work by a time period of not greater than eighteen months after the effective date. *See* Pl. Mot. Partial Summ. J. Ex. 1 at 41–44. For example, Exhibit D of the Declaration provides that (1) "[w]ithin twelve (12) months after the Effective Date [of June 21, 2006], Pulte shall design, permit, bond, and ... dedicate [the required roads]," *id.* at 41; (2) "[w]ithin twelve (12) months after the Effective Date, Pulte shall design, permit, bond and record all wet utilities ...," *id.* at 41; and (3) "[w]ithin eighteen months after the Effective Date, Pulte shall construct ... and place the Required Roads Phase I in service for vehicular use ...," *id.* at 43. *See also id.* Ex. 1, at 41–44, §§ 3(a)-(c), (e)(j). Pulte admits that it failed to complete all of its work within eighteen months after the effective date. *See id.* Ex. 22 at 28; Dkt. No. 50. Accordingly, Pulte materially breached the contract by not completing all phases of the construction by the appropriate time.

The Court rejects Defendant's argument that issues of material fact remain as to whether Plaintiff is receiving the substantial benefit of the bargain. The Declaration provides timeliness provisions in over fifteen clauses, unequivocally stating that Defendant is to complete its construction responsibilities within a given timeframe. Defendant failed to complete the construction in the time provided, even assuming the necessity of contractually-provided extensions. Therefore, Defendant materially breached the contract.

For all of the above reasons, the Court grants Plaintiff's Motion for Partial Summary Judgment as to material breach of contract.

### 2. Pulte's Affirmative Defenses Fail as a Matter of Law

The Court grants Plaintiff's Motion for Summary Judgment for the Fourth, Fifth, Eighth, Ninth, Tenth, Sixth, Seventh, and Fourteenth Defenses. Each Defense will be discussed in turn.

#### a. Pulte's Assertion of Waiver and/or Estoppel

■ The Court grants Plaintiff's Motion as to the defense of waiver and/or estoppel

because the Declaration expressly states (1) a delay or failure of one party to complain about a default of the other party's performance obligations will not be considered a waiver, and (2) any waiver of a default must be made expressly and in writing. Pl. Mot. Partial Summ. J. Ex. 1 at 6, 14.

Virginia adheres to the "plain meaning" rule, gives meaning to every clause, and words are given their usual, ordinary, and popular meaning. *Berry v. Klinger*, 225 Va. 201, 208, 300 S.E.2d 792 (1983). Pulte cannot produce any written document that waives Pulte's performance of the Declaration. Accordingly, the Court will not frustrate the Declaration's purpose by allowing the defense of waiver when the parties have otherwise contracted.

■ Additionally, the Court grants Plaintiff's Motion as to the estoppel defense because Defendant has failed to establish all of the necessary elements. Equitable estoppel requires clear and convincing evidence of (1) a false representation and concealment, (2) the representation was made with knowledge of the facts, (3) the party was ignorant of the truth of the matter, (4) the representation was made with the intention that the other party should act upon it, (5) the other party was induced to act upon it, and (6) the party claiming estoppel was misled to his injury. *Boykins Narrow Fabrics Corp. v. Weldon Roofing & Sheet Metal, Inc.*, 221 Va. 81, 86, 266 S.E.2d 887 (1980). Defendant cannot prove the first or third elements because (1) Plaintiff did not misrepresent the situation, as they served Defendant Default Notices as set out in the Declaration, and (2) Defendant knew it breached the Declaration. *See* Pl. Mot. Partial Summ. J. 7; Dkt. Nos. 1–7 to 1–9. For the above reasons, the Court grants Plaintiff's Motion for Partial Summary Judgment as to Waiver and/or Estoppel.

### b. Pulte's Assertion of Breach of Contract

■ The Court grants Plaintiff's Motion as to the defense of breach of contract because the Declaration explicitly provides the process of curing. Virginia adheres to the "plain meaning" rule, gives meaning to every clause, and words are given their usual, ordinary, and popular meaning. *Berry*, 225 Va. at 208, 300 S.E.2d 792. Section 5.1.1 provides that "if any party defaults . . . in the performance of any of its . . . obligations . . . and fails to cure such default within thirty (30) days after written notice (a "Default notice") from the [Non–Defaulting Party], then the Non–Defaulting Party . . . shall be entitled to all the remedies that are available at law or in equity. . . ." The Court will not frustrate the Declaration's meaning by allowing Defendant to assert the defense of breach of contract when it has not adhered to the opportunity-and-notice-to-cure provision. Had Plaintiff breached the Declaration, Defendant should have provided written notice; without written notice, it is not entitled to legal or equitable remedies. Accordingly, the Court grants Plaintiff's Motion for Partial Summary Judgment as to breach of contract.

### c. Pulte's Assertion of Illegality

■ The Court grants Plaintiff's Motion as to the defense of illegality because performance of the contract was legal. According to Virginia law, a party who consents to, and participates in, an illegal act cannot recover damages from other participants for the consequences of that act. *Johnson v. Campbell*, 258 Va. 453, 457, 521 S.E.2d 764 (1999). Here, neither party consented to, or participated in, an illegal act; the Declaration was a legal contract for construction. Pulte's requirement to obtain reviews, approvals, and permits does not constitute an illegal act; it bar-

gained to obtain those reviews, approvals, and permits in order to complete its construction project. Accordingly, the Court grants Plaintiff's Motion for Partial Summary Judgment as to Defendant's illegality defense.

### d. Pulte's Assertion of Impossibility, Impracticability, Mutual Mistake, and Frustration of Purpose

 The Court grants Plaintiff's Motion as to the defenses of impossibility, impracticability, mutual mistake, and frustration of purpose because Pulte cannot establish that its performance was rendered impossible as a result of an unforeseeable event. The parties agree that these four defenses are substantially similar. Def. Opp'n Pl. Mot. Partial Summ. J. 26; *see Opera Co. of Boston, Inc. v. Wolf Trap Foundation for the Performing Arts,* 817 F.2d 1094, 1099 (4th Cir.1987). Unless necessary, a contract should not be construed to contain provisions of impossible performance. *Shepherd v. Colton,* 237 Va. 537, 541, 378 S.E.2d 828 (1989). Furthermore, if a party can obtain the permits required for building, an impossibility defense is unavailable. *See id.* Here, Pulte could have obtained the permits, as exhibited by its continued and ongoing efforts to perform under the Declaration. Pl. Mot. Summ. J. ¶ 24. Accordingly, the Court grants Plaintiff's Motion because Defendant's performance was not impossible due to Defendant's continued construction effort in 2011.

### e. Pulte's Assertion of Unclean Hands

 The Court grants Plaintiff's Motion as to the unclean hands defense. Unclean hands prevents a party from obtaining equitable relief because of that party's own inequitable conduct. *Brown v. Kittle,* 225 Va. 451, 456, 303 S.E.2d 864 (1983). Here, Plaintiff seeks summary judgment on a legal claim, breach of contract. Hence, the Court grants Plaintiff's Motion

because Defendant applies an equitable doctrine to a legal claim.

### f. Pulte's Assertion of Laches and Impossible Reformation

 The Court grants Plaintiff's Motion for Partial Summary Judgment as to laches and impossible reformation because they are equitable defenses inapplicable to a breach of contract action. Def. Opp'n Mot. Partial Summ. J. 26.

For all of the above reasons, the Court grants Plaintiff's Motion for Partial Summary Judgment as to (1) material breach and (2) Pulte's Fourth, Fifth, Eighth, Ninth, Tenth, Sixth, Seventh, and Fourteenth Defenses as they relate to Count II of Plaintiff's Complaint.

### B. Defendant Pulte's Motion for Summary Judgment

The Court grants Defendant's Motion for Summary Judgment for Count II of Plaintiff's Complaint, but denies Defendant's Motion for Count I. Each issue will be discussed in turn.

### 1. Count II: Breach of Contract

The Court grants Defendant's Motion for Summary Judgment for Count II because Plaintiff cannot prove the material issue of damages. Plaintiff has not proved (1) any direct damages or (2) Defendant's causation of any legal damages. Each issue is discussed below.

### a. Direct Damages

 The Court grants Defendant's Motion for Summary Judgment on Count II of Plaintiff's Complaint because there is no issue of material fact as to direct damages. Under Virginia law, Virginia adheres to the "plain meaning" rule, gives meaning to every clause, and words are given their usual, ordinary, and popular meaning. *Berry,* 225 Va. at 208, 300

S.E.2d 792. Direct damages flow ordinarily and expectedly from a breach of contract. *Roanoke Hospital Ass'n v. Doyle & Russell, Inc.*, 215 Va. 796, 801, 214 S.E.2d 155 (1975). Consequential damages arise from unexpected, unpredictable circumstances. *Id.* Whether damages are direct or consequential is a matter of law. *Id.*

 The Court holds that Plaintiff may not recover monetary damages because all of Plaintiff's alleged damages are consequential, and the Declaration specifically prohibits the recovery of consequential damages. The Declaration states:

> If [Pulte] defaults in the performance of any of its covenants or obligations under this Declaration and fails to cure such default within thirty (30) days after written notice (a "Default Notice") from [Vienna Metro], then [Vienna Metro], as applicable, shall be entitled to all remedies that are available at law or in equity, including, without limitation, specific performance, self help (as described [in another section]), the right to offset amounts due by [Pulte] hereunder, the right to contact third parties, and recovery of reasonable legal fees and costs of collection, with respect to [Pulte's] breach of such covenants or obligations, but in no event shall any Party be liable for consequential, punitive or exemplary damages hereunder.... Any amounts due by [Pulte] and not paid prior to the end of such thirty (30) day cure period shall earn interest from the date such funds were originally due until the date paid at eighteen percent (18%) per annum. Each party shall be responsible for the defaults of their respective agents, contractors, employees and representatives.

Here, the Court holds that Plaintiff's damages are consequential because the damages do not flow ordinarily from a failure to build infrastructure. Damages that flow ordinarily and expectedly from a failure to build infrastructure are the present costs of building the infrastructure. However, in this case, Plaintiff asserts a claim for breach of contract encompassing (1) increased taxes and interest, (2) increased costs for land planning, (3) increased engineering costs, (4) increased costs for architecture and other design, and (5) increased costs for marketing. These additional costs accrued by Defendant's breach do not flow directly from a lack of infrastructure because the damages (1) relate to buildings that have yet to be designed or built; (2) were standard costs of obtaining a tenant or selling a building; (3) were not contemplated by the parties at the time of the execution of the contract; and (4) are not costs generally attributable from a lack of roads and utilities. Accordingly, these damages are consequential and may not be recovered based upon the contract's explicit exclusion of consequential damages.

This case is similar to *Comstock Potomac Yard, L.C. v. Balfour Beatty Constr., LLC,* 694 F.Supp.2d 468 (E.D.Va.2010). In *Comstock,* the plaintiff developer claimed that the breaching defendant's actions caused the plaintiff to incur additional costs, including increased real estate taxes, interest payments, and homeowners' fees. *Id.* at 489–90. The court held that these damages were unrecoverable because they were consequential damages, which had been waived in the contract. *Id.* The court reasoned that the damages were consequential because they did not flow naturally from the defendant's breach of contract. *Id.* at 490. Accordingly, the court ruled in favor of the defendant.

This case is similar to *Comstock* for three reasons. First, both plaintiffs sought to recover damages that were consequential in nature, such as interest payments and taxes. Second, both defendants

breached their contracts because they failed to adhere to the provisions in their respective contracts. Lastly, both plaintiffs had waived any right to consequential damages in their contacts. Accordingly, the Court concludes in the same manner as the *Comstock* court by ruling in favor of Defendant.

The Court rejects both of Plaintiff's arguments. First, the Court rejects Plaintiff's argument that Pulte's reading of § 5.1.1 renders § 5.1.3 meaningless because § 5.1.3 deals with the consequences of a Non–Defaulting party's demand, not notice. Second, the Court rejects Plaintiff's allegation that wasted work is not consequential because wasted work does not flow naturally from a breach of contract. Wasted work does not directly result from breach of contract; it is an aside to breach.

The Court further holds that Plaintiff's claims of an eighteen percent interest rate and default interest damages are consequential, as they do not flow naturally from the contract. The Declaration does not provide a standard eighteen percent interest in all cases; the interest is granted in specific instances. *See* Pl. Mot. Partial Summ. J. Ex. 1 at 14.

For all of the above reasons, the Court grants Defendant's Motion for Summary Judgment as to Count II because Plaintiff has no direct damages.

### b. Causation of Damages

The Court holds that Plaintiff may not recover monetary damages because Plaintiff cannot establish that Defendant actually or proximately caused Plaintiff any damage.

▇▇▇ Under Virginia Law, a breach of contract requires (1) a legally enforceable obligation, (2) the defendant's material breach of that obligation, and (3) damage to the plaintiff caused by the breach of that obligation. *Filak v. George*, 267 Va.

612, 594 S.E.2d 610, 614 (2004). In this case, it is undisputed that the parties had a legally enforceable obligation. *See* Def.'s Am. Ans. ¶ 1, Pl.'s Mot. Partial Summ. J. 10. Furthermore, the Court held that Defendant breached its obligation by failing to meet the deadlines in the contract. Accordingly, the only issue remaining is damages.

▇▇▇ A plaintiff asserting a breach of contract claim must prove that the defendant's breach actually and proximately caused the claimed damages. *See Saks Fifth Ave., Inc. v. James, Ltd.*, 272 Va. 177, 630 S.E.2d 304, 311 (2006). Plaintiff must prove damages with reasonable certainty; contingent, speculative, and uncertain damages are not recoverable because they are uncertain. *Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 671 S.E.2d 132, 135 (2009). A party generally cannot recover profits from new business because new businesses are speculative: a new business relies on unestablished variables such as future bargains, market status, and other contingencies that do not allow the Court to fix the measure of damages. *Mullen v. Brantley*, 213 Va. 765, 195 S.E.2d 696, 700 (1973).

▇▇▇ Here, Plaintiff cannot establish causation of damages for four reasons. First, the Court concludes that all of Plaintiff's damages are speculative. MetroWest is a new business enterprise, and its success depends on future bargains, market status, and a number of other contingencies that are unforeseeable. Plaintiff cannot establish that MetroWest would have realized any return on its investment because Vienna Metro (1) has no approved site plans, (2) has no design plans, (3) has no tenant, and (4) has no buyer. Vienna Metro cannot demonstrate any substantial revenue from the property because its potential profit is based entirely on groundless income projections.

Second, the Court determines that Plaintiff seeks to collect damages for items required for the regular cost of property maintenance, which were not proximately caused by Defendant's breach. Pulte did not cause Plaintiff to incur real estate taxes or any interest on loans; those amounts were fixed costs, to be paid even if Pulte had not breached the contract.

Third, Defendant's failure to complete infrastructure did not actually or proximately cause Plaintiff damage because lack of infrastructure is not directly tied to business procurement or the numerous events required to create a revenue stream. Vienna Metro cannot identify any evidence that the timing of the infrastructure construction caused Vienna Metro to lose any prospective tenant for MetroWest. At worst, Pulte's failure to create infrastructure exacerbated the difficulty of landing either tenants or purchasers; Plaintiff was contractually able to exercise self-help and seek a new contractor to ensure completion of the necessary infrastructure. Had Plaintiff used any of the remedies available to it after Notice of Default, Defendant would have been liable for those costs. This being said, Plaintiff chose not to exercise any remedies to ensure the Project's completion. Defendant was liable for its creation of additional cost directly attributable to infrastructure, but not for the myriad of Plaintiff's damage projections.

Fourth, the Declaration's plain language forbids recovery because there was no "amount[ ] due." The Declaration's plain meaning of "amount due" is an amount that a party would have expended to make itself whole. Here, Vienna Metro did not spend money to further the project to make itself whole; accordingly, there were no amounts due to Vienna Metro or any other party. Defendant's failure to procure permits or build infrastructure created a breach of contract, but it did not result in any amount due to Plaintiff because there was no payment due to anyone. Plaintiff essentially seeks a windfall; Plaintiff would not just be restored, but would be enriched through the monetary judgment it seeks. Accordingly, the plain language of the Declaration prohibits Plaintiff's recovery.

The Court rejects Plaintiff's argument that Pulte's reading of § 5.1.1 renders § 5.1.3 meaningless because § 5.1.3 deals with the consequences of a Non–Defaulting party's demand, not notice. Furthermore, Plaintiff cannot recover eighteen percent on its invested dollars because the interest rate is speculative. While Plaintiff contends that eighteen percent is the Declaration's established default interest rate, the Court determines that eighteen percent only covers specific items under the Declaration. As Plaintiff never exercised its right to self-help and only has a speculative budget, there are no amounts due. Def. Mot. Summ. J. Ex. 38 at 26–29. Additionally, the Court holds that Plaintiff's eighteen percent interest claim fails to function as a blanket interest default rate because the Declaration specifically provides instances where eighteen percent interest is appropriate. Plaintiff fails to establish that eighteen percent interest is appropriate for any of its consequential damages.

The Court distinguishes *Roanoke Hospital* from the case at hand. In *Roanoke Hospital*, plaintiff Roanoke Hospital sought damages for the delays associated with a contractor's failure to complete a hospital addition in a timely fashion. *Roanoke Hospital*, 215 Va. at 797–98, 214 S.E.2d 155. The Supreme Court of Virginia held that the extended financing costs as a result of the delay in completion were compensable direct damages, while increased interest rates were nonrecoverable

consequential damages. *Id.* at 802–3, 214 S.E.2d 155.

The Court holds that *Roanoke Hospital* is inapplicable for four reasons. First, *Roanoke Hospital* concerned an addition to an already existing structure, while this case concerns the building of infrastructure, roads, and sewers leading to a place where an office building may be built in the future. Second, Roanoke Hospital was an operating business—there was an established revenue stream—while this case concerns speculative damages. Third, Roanoke Hospital incurred specific additional interest expenses because the construction loan interest rate increase was directly tied to the defendant's construction delay. Here, Plaintiff cannot establish any specific, direct, and inconsequential expenses that Defendant caused; the loan interest it seeks was to be paid in any instance, as opposed to the increase caused by *Roanoke Hospital's* defendant. Lastly, Plaintiff conceded during oral argument that *Roanoke Hospital* is distinguishable from the present case because Roanoke Hospital actually had a completed structure, as opposed to this case's vacant land mass. Accordingly, the Court holds that *Roanoke Hospital* is inapplicable.

For all of the above reasons, the Court grants Defendant's Motion for Summary Judgment for Count II of Plaintiff's Complaint.

### 2. Count I: Specific Performance

 The Court denies Defendant's Motion for Summary Judgment for Count I of Plaintiff's Complaint because the (1) the Parties agreed that specific performance was a remedy for default, and (2) the Court finds there is no adequate remedy at law. When a remedy at law is inadequate to compensate for non-performance, specific performance may be decreed. *Chattin v. Chattin,* 245 Va. 302, 307–08, 427 S.E.2d 347, 350 (1993). Specific performance may be granted or refused under established equitable principles and the facts of a particular case. *Cangiano v. LSH Building Co.,* 271 Va. 171, 623 S.E.2d 889, 894 (2006). A party may not invite error and take advantage of the situation caused by his own wrong. *Id.* at 895.

As an initial matter, Defendant conceded that Plaintiff has no adequate remedy at law during oral argument. Accordingly, the Court holds that a remedy at law is inadequate because Plaintiff may not recover at law for Defendant's breach of contract. As established earlier, Plaintiff is unable to prove damages because the damages were consequential, which were contractually waived. Under the principles of law, Plaintiff will not be compensated for Defendant's non-performance, making specific performance appropriate. Furthermore, Defendant may not take advantage of its own breach of contract by leaving Plaintiff with no remedy at law or equity.

The Court rejects all three of Defendant's arguments. First, Vienna Metro does not have an adequate remedy at law because they cannot recover for breach of contract, despite Defendant's breach. Second, the Court will not be forced to rewrite the contract, as it may supplement a contract's terms so long as it "conforms substantially to the contract made by the parties." *Eascalco, Inc. v. Caulfield,* 220 Va. 475, 259 S.E.2d 821, 822 (1979). Lastly, Defendant need not be concerned with the Court's role as a construction manager, as specific performance is in the discretion of the chancellor himself. *Chesapeake Builders, Inc. v. Lee,* 254 Va. 294, 492 S.E.2d 141, 145 (1997).

The Court finds *Zygmunt v. Avenue Realty Co.,* 108 N.J. Eq. 462, 155 A. 544 (N.J.Ch.1931) persuasive. In *Zygmunt,* the parties agreed "to cut through a street known as Orchard street within one year," along with other infrastructure. *Id.* at

544–45. The defendant failed to construct the roads in one year, and the plaintiff filed suit, seeking specific performance. *Id.* The court ruled in plaintiff's favor, explaining that specific performance can be awarded when inadequacy of damages is great and the difficulties are not extreme. *Id.* at 545–46. The court reasoned that "the failure of defendant to [construct the infrastructure], deprives complainants of the enjoyment of the land which they have purchased on the faith of defendant's agreement." *Id.* at 546–46. The court reasoned that a "breach of contract which deprives one of the use of his land, is a breach which cannot be adequately compensated by a judgment for damages." *Id.* at 547.

This case and *Zygmunt* are similar for three reasons. First, both cases regarded the building of infrastructure, which deprived a plaintiff's enjoyment of the land that it had purchased on the faith of defendant's agreement. Second, both cases emanated from breach of contract claims where time was of the essence. Third, monetary judgments were inappropriate in both situations because damages were an inadequate remedy. Accordingly, this Court rules in the same manner as the *Zygmunt* court—that specific performance is available in this situation. *See also* Edward D. Re, Cases and Materials on Equity and Equitable Remedies 367–77 (5th ed. 1975).

Accordingly, the Court denies Defendant's Motion for Summary Judgment for Count I of Plaintiff's Complaint because specific performance is an adequate remedy.

### C. Attorney's Fees

The Court holds that Plaintiff is entitled to attorney's fees as a result of the breach of contract. Virginia adheres to the "plain meaning" rule, gives meaning to every clause, and words are given their usual, ordinary, and popular meaning. *Berry,* 225 Va. at 208, 300 S.E.2d 792.

According to the Declaration, the Non-Defaulting party is entitled to "recovery of reasonable legal fees and costs of collection" against the Defaulting Party. Pl. Mot. Partial Summ. J. Ex. 1 at 14. It is undisputed that Vienna Metro gave Default Notice to Pulte, and Pulte did not cure. *See* Pl. Ex. 22 at 28; Dkt. Nos. 1, 50. Hence, Vienna Metro is the Non-Defaulting Party and is entitled to attorney's fees from the Defaulting Party, Pulte. Accordingly, the Court grants Vienna Metro reasonable attorney's fees, following an appropriate showing under *Robinson v. Equifax Info. Servs., LLC,* 560 F.3d 235 (4th Cir.2009).

## IV. CONCLUSION

The Court grants Plaintiff's Motion for Partial Summary Judgment because (1) Defendant breached the contract, and (2) all of Defendant's affirmative defenses fail as a matter of law. The Court grants Defendant's Motion for Summary Judgment in respect to Count II of Plaintiff's Complaint because Plaintiff cannot establish direct damages. Accordingly, the only issues remaining for trial are Plaintiff's claim for specific performance and the amount of Vienna Metro's attorney's fees. It is hereby

ORDERED that Plaintiff's Motion for Partial Summary Judgment is GRANTED. It is further

ORDERED that Defendant's Motion for Summary Judgment is GRANTED for Count II of Plaintiff's Complaint. It is further

ORDERED that Defendant's Motion for Summary Judgment is DENIED for Count I of Plaintiff's Complaint.